Submitted November 24, 2009, affirmed November 3, 2010

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

RICHARD ANDREW NEWELL,
*Defendant-Appellant.*

Lane County Circuit Court
200613140; A138850

242 P3d 709

Peter Gartlan, Chief Defender, and Ryan T. O'Connor, Deputy Public Defender, Appellate Division, Office of Public Defense Services, filed the brief for appellant.

John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Michael R. Washington, Senior Assistant Attorney General, filed the brief for respondent.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

LANDAU, P. J.

**LANDAU, P. J.**

Defendant appeals from an amended judgment that revoked his probation and imposed revocation sanctions of imprisonment on his four convictions for second-degree encouraging child sexual abuse. ORS 163.686. On appeal, defendant contends that the trial court erred in imposing the revocation sanctions of imprisonment consecutively to one another without first having made findings in support of consecutive sentences pursuant to ORS 137.123. For the reasons explained below, we affirm.

The relevant facts are not in dispute. In September 2006, defendant pleaded guilty to four counts of encouraging child sexual abuse in the second degree, based on admissions that he was in possession of child pornography. On the first count, the sentencing court classified defendant under grid block 5-F on the sentencing guidelines, which provides for a presumptive probationary sentence of two years, but imposed an upward durational departure sentence of three years' probation; on the second, third, and fourth counts, which were classified under grid blocks 5-C, 5-B, and 5-A, respectively, and which carried presumptive sentences of imprisonment, the court imposed downward dispositional departure sentences of three years' probation on each of those. The court did not make findings in support of consecutive sentences pursuant to ORS 137.123.

In April 2008, the court revoked defendant's probation on all four convictions based on defendant's admission that he had committed five probation violations. On the first conviction, the court imposed a revocation sanction of six months' imprisonment. On the second conviction, the court imposed a term of imprisonment of 12 months, to be served consecutively to the term imposed for the first conviction. On the third conviction, the court imposed a term of imprisonment of 14 months, to be served consecutively to the term imposed on the second conviction. And on the fourth conviction, the court imposed a term of imprisonment of 16 months, to be served consecutively to the term imposed on the third conviction.[1] In sum, the court imposed a total period of incarceration of 48 months.

---

[1] Each of those sanctions corresponded with the presumptive sentence that could have been imposed for those convictions under grid blocks 5-C, 5-B, and 5-A,

At the probation revocation hearing, defendant argued that, although he had waived a jury when he pleaded guilty to the charges and had stipulated to the violations, under *State v. Ice*, 343 Or 248, 170 P3d 1049 (2007),[2] the court could not impose consecutive revocation sanctions because factual findings in support of such sanctions were required by ORS 137.123, and defendant had not waived his right to jury findings in support of revocation sanctions. The court rejected that argument, noting that OAR 213-012-0040(2)(b) provided authority, when a defendant is serving multiple probationary terms and commits multiple supervision violations, for the court to "impose the incarceration sanctions concurrently or consecutively." Thus, the court concluded that findings pursuant to ORS 137.123 were not necessary; the only findings required were the findings of multiple supervision violations to which defendant had, in fact, stipulated.

■ On appeal, defendant has abandoned his argument concerning *Ice*, but continues to contend that probation sanctions that involve consecutive terms of incarceration require factual findings made pursuant to ORS 137.123. He asserts that, if the court does not make the required findings under ORS 137.123, the sanctions must be concurrent. In this case, defendant contends, the court did not make the necessary findings at the probation revocation proceeding, and defendant did not admit to them when he pleaded guilty to the four offenses. Accordingly, he concludes, the sentencing court could impose only concurrent terms for each conviction upon revocation of probation.

The state does not dispute that the court did not make the findings that would be required for the imposition of consecutive sentences under ORS 137.123. It nevertheless contends for two reasons that the trial court did not err in imposing consecutive sentences without making such

---

respectively. *See* OAR 213-010-0002(2) (providing that, for offenders whose probation sentence was a departure sentence, "the sentence upon revocation shall be a prison term up to the maximum presumptive prison term which could have been imposed initially").

[2] Defense counsel made this argument before the United States Supreme Court reversed that holding in *Oregon v. Ice*, 555 US 160, 129 S Ct 711, 172 L Ed 2d 517 (2009).

findings. First, the state contends that the sentencing guideline administrative rule, OAR 213-012-0040(2)(b), provides for the imposition of consecutive sentences upon revocation of probation and makes no mention of any finding requirement. The state acknowledges that, in that respect, the sentencing guideline stands in direct conflict with ORS 137.123. According to the state, because the sentencing guidelines have "the authority of statutory law," the guidelines should prevail over any inconsistency in ORS 137.123 because the guidelines are more recent. Second, the state argues that, in any event, ORS 137.123 does not apply to probation revocation sanctions and, instead, applies to initial sentencing only.

As explained below, we conclude that ORS 137.123 applies when a person is sentenced (or resentenced), but has no application in the context of probation violation proceedings.

ORS 137.123 provides, in part:

"(1)  A sentence imposed by the court may be made concurrent or consecutive to any other sentence which has been previously imposed or is simultaneously imposed upon the same defendant. The court may provide for consecutive sentences only in accordance with the provisions of this section. A sentence shall be deemed to be a concurrent term unless the judgment expressly provides for consecutive sentences.

"* * * * *

"(5)  The court has discretion to impose consecutive terms of imprisonment for separate convictions arising out of a continuous and uninterrupted course of conduct only if the court finds:

"(a)  That the criminal offense for which a consecutive sentence is contemplated was not merely an incidental violation of a separate statutory provision in the course of the commission of a more serious crime but rather was an indication of defendant's willingness to commit more than one criminal offense; or

"(b)  The criminal offense for which a consecutive sentence is contemplated caused or created a risk of causing greater or qualitatively different loss, injury or harm to the victim or caused or created a risk of causing loss, injury or

harm to a different victim than was caused or threatened by the other offense or offenses committed during a continuous and uninterrupted course of conduct."

The statute plainly asserts in subsection (1) that a court may impose consecutive sentences "only in accordance with the provisions of this section" and, in subsection (5), then states that findings are required.

The sentencing guideline on which the state relies, OAR 213-012-0040(2)(b), applies to the imposition of a sentence upon revocation of probation. It provides, in part:

"(2) When an offender is serving multiple terms of probationary supervision, the sentencing judge may impose revocation sanctions for supervision violations as provided by OAR 213-010-0002 for the violation of each separate term of probationary supervision.

"(a) If more than one term of probationary supervision is revoked for a single supervision violation, the sentencing judge shall impose the incarceration sanctions concurrently.

"(b) If more than one term of probationary supervision is revoked for separate supervision violations, the sentencing judge may impose the incarceration sanctions concurrently or consecutively."

The rule does not require findings before imposing consecutive incarceration sanctions on revocation of probation for multiple supervision violations. The question in this case requires us to determine how to reconcile the statute and the guideline.

We begin with the state's argument that the guidelines control because they, in effect, supersede any contrary requirement of the statute. The linchpin of the state's argument is its assertion that the sentencing guidelines are themselves statutes. According to the state, that assertion is supported by *State v. Langdon*, 330 Or 72, 74, 999 P2d 1127 (2000), in which the Oregon Supreme Court stated that, "[a]lthough the sentencing guidelines were created as administrative rules, the legislature approved them in 1989, thus giving them the authority of statutory law." That means, the

state contends, that the ordinary rules of statutory construction that pertain to conflicting statutes come into play, and one of those rules is that more recently enacted and particular statutes prevail over older more general statutes that stand in irreconcilable conflict.

The problem with the state's argument is its premise, *viz.*, that the sentencing guidelines are statutes. We considered, and rejected, precisely that argument in *State v. Norris*, 188 Or App 318, 72 P3d 103, *rev den*, 336 Or 126 (2003), which the state does not cite. (Indeed, the state's argument in this case is especially odd, given that it is directly contrary to the argument that the state advanced in *Norris*.)

In *Norris*, the defendant argued that certain amendments to the sentencing guidelines are unconstitutional because their adoption did not conform with the publication requirements of Article IV, section 22, of the Oregon Constitution, which applies only to the enactment of statutes. The defendant, citing *Langdon*, contended that, because the sentencing guidelines have the force of statutes, they should be considered as such and, as a result, subject to the publication requirements of Article IV, section 22.

We rejected the argument, explaining:

"True, [*Langdon* * * * says] that the guidelines have 'the authority of statutory law.' But that hardly establishes that the guidelines actually *are* statutes for the purposes of Article IV, section 22. Indeed, any valid administrative rule—whether or not approved by the legislature—has the effect of statutory law. As the Supreme Court explained in *Bronson v. Moonen*, 270 Or 469, 476, 528 P2d 82 (1974): 'Administrative rules and regulations are to be regarded as legislative enactments having the same effect as if enacted by the legislature as part of the original statute.'

"Merely because the legislature expresses its approval by means of a statute does not transform the object of that approval into a statute. The legislature, for example, may approve certain agency expenditures. The approval may be expressed in the form of a statute, but that does not transform the expenditures themselves into statutes. Similarly, the legislature may approve applications for the use of certain water rights. ORS 537.805(4)(a). Again, the approval

may be expressed in the form of a statute, but that does not transform the applications themselves into statutes. It stands to reason, therefore, that, merely because the legislature in 1989 declared its approval of the sentencing guidelines by statute, it did not thereby transform the guidelines themselves into statutes. They were promulgated as administrative rules, and administrative rules they remained[.]"

*Id.* at 342-43 (citations omitted; emphasis in original).

■■ Thus, the predicate for the application of the statutory construction rules on which the state relies does not exist: The guidelines are not statutes; rather, they are administrative rules. It is elementary that, when an administrative rule cannot be reconciled with a statute, it is the statute that controls. *See, e.g., Avis Rent A Car System, Inc. v. Dept. of Rev.*, 330 Or 35, 41, 995 P2d 1163 (2000) (administrative rule that conflicts with statute is invalid). Accordingly, to the extent that the sentencing guideline in this case conflicts with ORS 137.123, it would be invalid.

That leads to the state's second argument that, in any event, there is no such conflict, because ORS 137.123 applies only to the imposition of sentences and not to the imposition of probation revocation sanctions. On that argument, the state fares somewhat better.

■■ As we have noted, ORS 137.123 plainly provides that a court may impose consecutive sentences only if the court makes appropriate findings. The question is whether imposing sanctions upon revocation of probation is "sentencing" within the meaning of that statute. The relevant statutes appear to draw a distinction between sentencing and the imposition of probation revocation sanctions. ORS 137.120(2), for example, refers to sentencing as occurring after a person "is convicted," while, in contrast, ORS 137.545(5)(b) provides that the court that imposed a probationary sentence "may revoke probation supervision and *impose a sanction* as provided by the rules of the Oregon Criminal Justice Commission." (Emphasis added.) If the legislature uses different terms in statutes, we generally will assume "that the legislature intends different meanings" for those terms. *Dept. of Transportation v. Stallcup*, 341 Or 93,

101, 138 P3d 9 (2006) (citing *State v. Keeney*, 323 Or 309, 316, 918 P2d 419 (1996)).

Our case law similarly draws a distinction between sentencing (or resentencing) and proceedings held concerning probation violations, and the sanctions that may be imposed as a result. In *State v. Hoffmeister*, 164 Or App 192, 990 P2d 910 (1999), the trial court, upon revoking the defendant's presumptive probationary sentence that had been imposed under grid block 7-I of the guidelines, determined that the defendant's criminal history was such that he should have been classified under grid block 7-C. Accordingly, the court imposed, as a revocation sanction, the 21-month prison term that was "within the sanction range prescribed by grid-block 7-C," *id.* at 194, but was not within the sanction range prescribed by grid block 7-I. We held that reclassifying the defendant and imposing a revocation sanction based on a different classification than the one used at sentencing was error. We noted that the court had no "inherent authority to modify executed sentences." *Id.* at 196 (citing *State v. DeCamp*, 158 Or App 238, 243, 973 P2d 922 (1999)). The defendant's "probationary sentence had been executed," and thus "the trial court had no authority to modify [the] executed sentence[.]" *Hoffmeister*, 164 Or App at 197. *See also State v. Bolf*, 217 Or App 606, 176 P2d 1287 (2008) (where court accepted stipulation at sentencing to a grid block that carried a presumptive probationary sentence, court lacked authority to reclassify the defendant to a different grid block in order to impose a greater probation revocation sanction).

The pertinent administrative rules promulgated by the Oregon Criminal Justice Commission likewise maintain a distinction between how consecutive "sentences" are handled and how probation sanctions involving consecutive incarceration terms are handled. The rule that is directly on point, OAR 213-012-0040(2), does not use the term "consecutive sentence," but provides instead:

"When an offender is serving multiple terms of probationary supervision, the sentencing judge may impose revocation sanctions for supervision violations as provided by OAR 213-010-0002 for the violation of each separate term of probationary supervision.

"\* \* \* \* \*

"(b)  If more than one term of probationary supervision is revoked for separate supervision violations, the sentencing judge may impose the incarceration sanctions concurrently or consecutively."

In sum, that rule addresses consecutive "revocation sanctions" or "incarceration sanctions," whereas ORS 137.123 addresses "consecutive sentences." OAR 213-010-0002, which is cross-referenced in OAR 213-012-0040, likewise does not use the phrase "consecutive sentences." Although it does, at points, use the word "sentence," it specifically refers to a revocation sanction as "the sentence *upon revocation*," OAR 213-010-0002(1), (2). Thus, we conclude that the Oregon Criminal Justice Commission's rules, like the legislature's statutes, maintain a distinction between a consecutive sentence imposed upon conviction, and a consecutive incarceration sanction imposed as a result of multiple probation violations.

To the extent that there is any doubt about this, it is, in any event, squarely resolved by reference to the commentary to the original sentencing guidelines, as enacted by the legislature in 1989. The pertinent provisions of OAR 213-012-0040(2) and OAR 213-010-0002 have not changed. With respect to OAR 213-012-0040(2), the commentary provides:

"Section 2.  A different rule applies to revocation sanctions associated with multiple terms of probation which may result in revocation sanctions for each term of probation. *The prison term associated with the revocation sanction will be served concurrently or consecutively depending on the nature of the supervision violation.* Under subsection (a), if the basis for multiple revocations is a single supervision violation, the incarceration-term sanctions must be served concurrently. Under subsection (b), if multiple probationary terms are revoked for separate and distinct supervision violation[s], the incarceration-term sanctions may be imposed consecutively."

*Oregon Sentencing Guidelines Implementation Manual* 118 (1989) (emphasis added).

Similarly, the commentary for OAR 213-010-0002 provides that "[t]he sanctions described by this rule are penalties for supervision violation and *do not directly relate to the crime of conviction.*" *Id.* at 170 (emphasis added).

■     The purpose of probation violation hearings is for a court to consider whether "the purposes of probation are not being served, or * * * the terms thereof have been violated." *Barker v. Ireland,* 238 Or 1, 4, 392 P2d 769 (1964). None of the rules or statutes cited above, and none of our case law, supports defendant's suggestion that the facts of the underlying crimes would need to be relitigated (which would necessarily need to occur were ORS 137.123 to apply in this circumstance) in order to determine the appropriate sanctions to impose for probation violations.

■     Accordingly, we conclude that the trial court was correct in determining that the sole criterion for whether it could impose multiple incarceration sanctions was whether there had been multiple probation violations. OAR 213-012-0040(2).

Affirmed.